## Richmond.

## BOARD OF SUPERVISORS OF NORFOLK COUNTY AND OTHERS V. DUKE AND OTHERS.

### January 18, 1912.

1. CONSTITUTIONAL LAW—*Act Authorizing Courts to Incorporate Towns—Legislative Powers—Delegation.*—The act of Assembly approved March 14, 1908, authorizing the circuit courts to incorporate towns of more than two hundred and less than five thousand inhabitants is not unconstitutional on the ground of conferring legislative powers on such courts. In passing said act the legislature was acting in obedience to section 117 of the Constitution, which provides that "general laws for the organization and government of cities and towns shall be enacted by the General Assembly, and no special act shall be passed in relation thereto, except in the manner provided in Article 4 of this Constitution, and then only by a recorded vote of two-thirds of the members elected to each house." This language of the Constitution is sufficient not only to permit, but to require, the legislature to make provision for the creation and regulation, for the organization, and for the government of municipal corporations, and hence it was competent for the legislature to delegate such power to the courts. The reasoning and conclusions of *Henrico County* v. *City of Richmond,* 106 Va. 282, are re-affirmed.

2. CONSTITUTIONAL LAW—*Statutes—Power of Courts.*—While courts possess power to declare acts of the General Assembly unconstitutional, they will not do so unless there is a clear violation of some explicit provision of the Constitution.

3. TOWNS—*Incorporation by Courts—Thickly-Settled Communities—Subdivision*—The act of March 14, 1908, authorizing the circuit courts to incorporate a "thickly-settled community" does not authorize the sub-division of that community according to the caprice and whim of a limited portion of the people constituting the entire community, and the incorporation of that portion. A community constituting but one continuous, contiguous, and homogeneous settlement cannot be sub-divided for the purpose of incorporation. Such is not the reasonable construction of the act.

Error to a judgment of the Circuit Court of Norfolk county,

on a petition for incorporation as a town.   Judgment for the petitioners.   Defendants assign error.

*Reversed.*

The opinion states the case.

*Sale, Mann & Tyler, J. W. Happer,* and *T. J. Wool,* for the plaintiffs in error.

*John N. Sebrell, Jr.,* for the defendants in error.

Keith, P., delivered the opinion of the court.

Certain persons, claiming to be electors, filed their petition in the Circuit Court of Norfolk county, in which they state that a certain thickly-settled community, known as Pinner's Point, in the county of Norfolk, described by metes and bounds in the petition, containing twelve hundred and fifty inhabitants, being of opinion that it was to their interest to be incorporated, and that the general good of the community would thereby be promoted, asked the court to incorporate them as a town, under the name of "Pinners," by virtue of an act approved March 14, 1908, entitled "An act to provide for the incorporation by the courts of towns of more than 200 and less than 5,000 inhabitants, and conferring upon said towns, when incorporated, certain powers of taxation," to be found in the Acts of 1908, at p. 552.

Upon their motion, the board of supervisors of Norfolk county and certain individuals were made parties to this petition, and filed their demurrer in writing, which was overruled, and thereupon they filed their answer, to which the petitioners replied generally; and the court, having heard the evidence, entered an order in accordance with the prayer of the petition, to which order a writ of error was awarded, and the case is before us for review.

By the terms of the act referred to, it is provided that the case shall be heard in the appellate court, "without reference to the principles of demurrer to evidence, the evidence to be considered as an appeal in chancery cases."

Certain formal objections were taken in the circuit court by the

respondents, and are insisted upon here, which, in the view we shall take of this case, need not be determined. We shall assume that the number of electors contemplated, duly qualified as provided by law, united in the petition to the circuit court; that the description of the territory proposed to be embraced in the incorporation is correctly given; that due publication was made in accordance with the statute, and, in fine, that all matters of form were complied with.

The first question which we shall consider arises upon the demurrer. It is insisted that the act of Assembly of the 14th of March, 1908, is unconstitutional, because it violates section 5, Art. 1, of the Constitution of 1902 (Code 1904, p. ccix.), the first paragraph of which declares that the legislative, executive, and judicial departments of the State shall be separate and distinct; and Art. 3, which declares that "Except as hereinafter provided, the legislative, executive, and judicial departments shall be separate and distinct, so that neither exercise the powers properly belonging to either of the others, nor any person exercise the power of more than one of them at the same time."

By section 117 of Art. 8 of the Constitution, (Code 1904, page ccxxxviii.), it is provided that "General laws for the organization and government of cities and towns shall be enacted by the General Assembly, and no special act shall be passed in relation thereto, except in the manner provided in Art. 4 of this Constitution, and then only by a recorded vote of two-thirds of the members elected to each house."

Plaintiffs in error contend that the act in question delegates to the circuit courts legislative functions, in deciding (1) whether the proposed incorporation is for the interest of the inhabitants of the proposed town; (2) whether the general good of the community will be promoted by incorporation; (3) whether or not the prayer of the petitioners is reasonable; (4) that it permits the courts to alter the boundaries named in the petition and to fix others, and (5) that it vests absolutely in the court the discretion to dispose of the matter as to it may seem best.

This general subject was before this court in *Henrico County* v. *City of Richmond*, 106 Va. 282, 55 S. E. 683, 117 Am. St. Rep. 1001. That, it is true, was a case involving the constitutionality

of an act authorizing the annexation of territory to an existing municipal corporation.

By section 126 of the Constitution, (Code 1904, page ccxlii.,) it is declared that ''The General Assembly shall provide by general laws for the extension and contraction, from time to time, of the corporate limits of cities and towns, and no special act for such purpose shall be valid.''

When the legislature came to deal with the duty imposed by that section, it passed an act which is to be found in the Code of 1904 as section 1014–a. It imposes upon the courts substantially the same duties that they are required to exercise under the act called in question in the controversy before us.

The constitutionality of section 1014–a was vigorously attacked upon arguments almost identical with those under consideration, and enforced by substantially the same line of authorities, though the industry of counsel in the case before us has added to the number. It was urged upon us in *Henrico County* v. *City of Richmond* that there was a commingling of legislative and judicial functions in the act, which rendered it null and void. It was pointed out that it was for the courts to determine the necessity for and expediency of annexation, and whether the terms and conditions set forth in the ordinance were reasonable and fair, and whether fair and just provisions were made for the future management and improvement of the annexed territory; that if the court or judge should be satisfied with the necessity for or expediency of such annexation, and that such conditions and provisions were reasonable and fair, an order should be entered providing for the annexation of the territory; but if of opinion that the annexation was unnecessary or inexpedient, then the motion for annexation should be dismissed; that it provided that if the court or judge should be of opinion that the annexation of only a part of the territory was necessary or expedient, or that the ordinance did not contain fair and reasonable terms, or that more territory should be annexed than was embraced within the metes and bounds originally set forth, it should enter a proper order, embodying what it deemed reasonable and fair terms upon which the annexation should be had, and how much of the territory should be annexed, and direct the annexation of such territory

13

in conformity with the terms and conditions so prescribed. It was made the duty of the court to draw the lines of annexation so as to have a reasonably compact body of land, and to see that no land should be taken into the city which was not adapted to city improvements, unless necessarily embraced in said compact body; and other provisions of a like character, all of which were claimed to be in their essence legislative functions; that the attempt to confer the exercise of such powers upon courts was in plain violation of those provisions of the Constitution intended to secure the complete separation of executive, judicial, and legislative departments, so that neither exercise the powers properly belonging to either of the others, nor any person exercise the power of more than one of them at the same time.

The opinion of the court deals with all of these subjects, and, after a full consideration, reached the conclusion, as set forth in the syllabus, that "An act of Assembly providing for the extension of the corporate limits of cities and towns, and which confers upon the circuit courts of the counties in which the territory lies the power to ascertain and determine the boundaries to be embraced, and the necessity for and the expediency of extending the corporate limits of cities and towns, is not unconstitutional on the ground of conferring legislative powers on such courts. Nearly or quite all of the questions of necessity and expediency submitted to the courts for their determination are questions of fact, and are to be ascertained judicially, and the limited legislative power conferred, if any, is not in violation of the Constitution. Governments could not exist if the inhibition on the intermingling of such powers in one person or body were strictly, literally, and unyieldingly applied in every situation. The manifest purpose of the legislature was to make a case to be tried in court, in which all the parties concerned are brought before the court and given an opportunity to be heard."

That case has been accepted as law, and has been acted upon in numerous instances, and is not now to be disturbed, except for the gravest and most convincing reasons. We shall not undertake to add anything to the reasoning of the court, and shall present but one authority in addition to those there considered.

In *Wayman* v. *Southard*, 10 Wheat. 3, 6 L. Ed. 653, Chief Justice Marshall, dealing with a kindred subject, uses language which strongly confirms the result reached by this court. Said he: "The difference between the departments undoubtedly is that the legislature makes, the executive executes, and the judiciary construes the law; but the maker of the law may commit something to the discretion of the other departments, and the precise boundary of this power is a subject of delicate and difficult inquiry, into which a court will not enter unnecessarily."

In passing section 1014-a the legislature was obeying the mandate of the Constitution, which requires it to provide by general laws for the extension and contraction, from time to time, of the corporate limits of cities and towns, and no special act for such purpose shall be valid." In passing the law under consideration, it was acting in obedience to section 117 of the Constitution, which provides that "general laws for the organization and government of cities and towns shall be enacted by the General Assembly, and no special act shall be passed in relation thereto, except in the manner provided in Article 4 of this Constitution, and then only by a recorded vote of two-thirds of the members elected to each house."

Admitting the correctness of the decision in *Henrico County* v. *City of Richmond*, its binding force as authority can only be avoided by differentiating the creation of a municipal corporation from the annexation of additional territory to an existing corporation. It may be conceded that the creation of a municipal corporation is in its essence a legislative act, and the true question is whether or not it was competent for the legislature to delegate such a power to the courts.

The Constitution requires the General Assembly—does not merely permit, but commands that body—to enact general laws for the organization and government of cities and towns.

This language is to be construed in accordance with the ordinary meaning of the words used. *To organize* means to arrange or constitute in parts, each a special function, act, office, or relation; it means something more in the connection in which it is used than to put into working order agencies already established, for that duty is more properly embraced under the word "government";

it is required to pass laws both to organize and to govern; and it is plain to us that the language is sufficient not only to permit, but to require, the legislature to make provision for the creation and regulation, for the organization, and for the government of municipal corporations. Certainly it cannot be said that the act passed in pursuance of the mandate here given is so plainly in excess of authority that the courts would be justified in holding it to be null and void, as in contravention of the constitutional provisions to which we have referred. It is not necessary to reiterate or to cite authorities in support of the proposition that, while courts possess power to declare acts of the General Assembly unconstitutional, they will not do so unless there is clear violation of some explicit provision of the Constitution.

We are of opinion that the same process of reasoning, which in the case of *Henrico County* v. *City of Richmond* led to the conclusion that the act for the annexation of territory was valid, leads inevitably to the same result in dealing with the act of March 14, 1908.

It is assigned as error that the court found that the prayer of the petition was reasonable when the evidence does not sustain that conclusion, and that it erred because, while the act authorizes the incorporation of a "thickly-settled community," it does not justify the carving out of a part of a thickly-settled community and its incorporation. We will consider these two together.

We have carefully considered the evidence in this case and the maps which are made a part of the record, from which it plainly appears that there is a continuous settlement fronting upon "Western Branch"; that through this settlement there passes what is known as the "Belt Line" railway. That portion of the settlement to the west of the railway is known as "Pinners," that to the east as "Port Norfolk." They are contiguous to each other, and appear to be homogeneous in population and in real interests, though there may be diversity of opinion between them. They are separated only by the tracks of a railway, that is made one of the boundaries set out in the petition for the incorporation of "Pinners," some of the streets passing through Pinners and Port Norfolk without interruption; and we cannot think it reasonable, or to the best interests of that community, that they should

be divided into parts, and considered and treated as two separate communities, when, in truth, they constitute but one continuous, contiguous, and homogeneous settlement. As the act requires that the town incorporated shall contain not less than two hundred inhabitants, it is conceivable that such a community might be almost indefinitely sub-divided and erected into municipal corporations, if a faction in one of the sub-divisions chanced to obtain control. We do not believe that the act contemplates anything of the kind, and when it provides for the incorporation of a thickly-settled community, it does not mean that that community shall be sub-divided in accordance with the caprice and whim of a limited portion of the people constituting the entire community. Great and unnecessary burdens might be imposed, and great wrong and injury accomplished, under such a construction.

We are of opinion that the evidence does not justify the finding of the circuit court, that the prayer of the petition is reasonable, and that the general good of the community will be promoted by the incorporation of the town of Pinners.

The order appealed from is therefore reversed, and the petition is dismissed, with costs to the parties substantially prevailing.

*Reversed.*